IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| THE CORPORATION OF MERCER UNIVERSITY, : : : | |
| Plaintiff, : : | |
| : | Civil Action No. |
| v. : | 5:07-CV-243(HL) |
| : | |
| JPMORGAN CHASE & CO., : : | |
| Defendant. : : | |

## ORDER

Before the Court are Defendant's Motion to Dismiss (Doc. 7), Plaintiff's Request for Judicial Notice (Doc. 21), and Defendant's Motion for a Hearing (Doc. 29). For the following reasons, Defendant's Motion to Dismiss is denied, Plaintiff's Request for Judicial Notice is denied, and Defendant's Motion for a Hearing is denied.

### I.  BACKGROUND

Under IRC § 103, interest earned on any state or local government bonds is excludible from gross income unless the bonds are arbitrage bonds. IRC § 103(a),(b)(2). Bonds of an issue are arbitrage bonds if any portion of the proceeds of the issue are "reasonably expected (at the time of issuance of the bond) to be used directly or indirectly to acquire higher yielding investments." IRC § 148(a)(1). This case involves an IRS preliminary adverse determination that Series 1991 Bonds issued by the Private Colleges and Universities

1

Authority (the "Authority") for the benefit of Mercer University were arbitrage bonds because the proceeds of the Series 1991 Bonds were used to acquire U.S. Treasury securities with a yield that was materially higher than the yield on the bonds. The preliminary adverse determination was based on a conclusion by the IRS that Defendant JPMorgan engaged in yield burning in the sale of the Treasury securities to the Authority and Plaintiff. Yield burning occurs when a broker, such as JPMorgan, inflates the price of Treasury securities in an attempt to artificially lower the yield on the securities. Because the yield of a Treasury security is inversely related to its price, a broker that excessively marks up the price of Treasury securities gains an additional profit from the markup and gives the appearance of compliance with the yield restriction requirements contained in the arbitrage laws. Based on the actual fair market value of the securities in this case, the IRS concluded that the yield on the securities was materially higher than the yield on the bonds, and therefore, the Series 1991 Bonds were arbitrage bonds.

The Authority was the issuer of the bonds, and Plaintiff was the conduit borrower. As the conduit borrower, Plaintiff assumed directly responsibility and liability for repayment of the Series 1991 Bonds and their tax-exempt status. When the IRS issued its preliminary adverse determination that the Series 1991 Bonds were arbitrage bonds, Plaintiff entered into a closing agreement with the IRS whereby Plaintiff paid $500,000 to the IRS to settle the IRS's audit of the bond issue. Pursuant to the closing agreement, the IRS declared that the Series 1991 Bonds were not arbitrage bonds, and thus the interest earned on the bonds by the bondholders did not constitute gross income. Subsequently, Plaintiff filed suit against

2

Defendant for equitable indemnity and fraud.

In its Motion to Dismiss Plaintiff's Complaint, Defendant seeks this dismissal of Plaintiff's equitable indemnity claim on the grounds that (1) Plaintiff voluntarily settled with the IRS, (2) Plaintiff had a complete legal defense to the IRS's preliminary adverse determination, and (3) no liability was imputed to Plaintiff. Defendant seeks dismissal of Plaintiff's fraud claim on the ground that it is barred by the statute of limitations.

## II.    MOTION TO DISMISS STANDARD

A Rule 12(b)(6) motion to dismiss a complaint, or any portion thereof, should only be granted when it appears that the facts alleged fail to state a plausible claim for relief. Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1965-66 (2007); Fed. R. Civ. P. 12(b)(6). A court ruling on a motion to dismiss must accept all well-pleaded facts as true, and it must construe all reasonable inferences therefrom in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999). The "threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is...exceedingly low." Ancata v. Prison Health Servs. Inc., 769 F.2d 700, 703 (11th Cir. 1985) (quotation and citation omitted). Finally, a court considering a motion to dismiss should generally consider only the facts alleged in the complaint and documents attached to it; however, a court can also consider a document not attached to the complaint if the document is central to the complaint, the document's contents are alleged in the complaint, and no party questions those contents. Daewoo Motor Am., Inc. v. Gen. Motors Corp., 459 F.3d 1249, 1266 n.11 (11th Cir. 2006).

### III. DISCUSSION

#### 1. Equitable Indemnity

##### a. Voluntary settlement

Defendant argues that Plaintiff's equitable indemnity claim fails as a matter of law because Plaintiff was not "compelled" to settle with the IRS. Defendant asserts that Georgia law only allows indemnity if the indemnitee settled in response to some sort of formal demand from the claimant, and the IRS's preliminary adverse determination does not qualify as such a formal demand.

An individual who has been legally required to pay damages caused by the torts of a third-party can maintain an action for indemnity against that party. Emergency Professionals of Atlanta, P.C. v. Watson, 288 Ga. App. 473, 475, 654 S.E.2d 434, 436 (2007). Georgia's indemnity statute provides that "the right of indemnity, express or implied, from another or others shall continue unabated and shall not be lost or prejudiced by compromise and settlement of a claim or claims for injury to person or property or for wrongful death and release therefrom." O.C.G.A. § 51-12-32(c). Numerous Georgia cases have recognized that the language of the statute expressly permits "'a party to compromise or settle a claim in lieu of a lawsuit or judgment against the party without prejudicing that party's right to seek indemnity from another.'" See, e.g., DeKalb Co. v. Lenowitz, 218 Ga. App. 884, 888, 463 S.E.2d 539, 544 (1995) (quoting U.S. Fidelity & Guar. Co. v. Sayler Marine Corp., 196 Ga. App. 850, 851, 397 S.E.2d 188, 189 (1990)) (emphasis added). If, however, the party was not under the compulsion of law when it settled, the right to indemnity is lost. See

4

Emergency Professionals of Atlanta P.C., 288 Ga. App. at 475, 654 S.E.2d at 436. A settlement is considered to be under compulsion of law if it was made in the face of allegations that demonstrated a legal necessity for payment. Id. at 476, 654 S.E.2d at 437. For example, a party who has a valid legal defense to a claim asserted against it is not under the compulsion of law to pay damages. See, e.g., GAF Corp. v. Tolar Constr. Co., 246 Ga. 411, 271 S.E.2d 811 (1980).

    Here, Defendant contends that Plaintiff was not under the compulsion of law when it settled with the IRS because the IRS never issued to Plaintiff a formal demand for payment. Defendant argues that Plaintiff could only seek indemnity if it settled in response to a proposed adverse determination, rather than a preliminary adverse determination. Defendant's argument misses the point. The issue of the voluntariness of an indemnitee's settlement with an injured party does not turn on whether settlement was made in response to some sort of formal demand. Instead, it turns on whether settlement was made in response to the assertion of a valid legal claim to which the indemnitee did not have a legal defense. The IRS issued its preliminary adverse determination to Plaintiff and laid out the legal basis for its determination. As a matter of law, there is nothing to prevent the Plaintiff from seeking indemnity after settling with the IRS in response to the preliminary adverse determination. Of course, Plaintiff would not be entitled to indemnity if it had a valid legal defense to the settled claim. This brings the Court to Defendant's next contention.

    **b. Complete legal defense**

    An individual who settles a legal claim without asserting a complete legal defense to

the claim is not entitled to indemnity. Emergency Professionals of Atlanta, P.C., 288 Ga. App. at 476, 654 S.E.2d at 437. The term "complete legal defense" means a defense as a matter of law. Reliance Ins. Co. of Illinois, Inc. v. Richfield Hospitality Servs., 92 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000). This means that the court considering the indemnity claim must determine whether, when taking the facts in the light most favorable to the party that sued the indemnitee in the underlying action, the indemnitee could have been granted a summary judgment. Id.

In its Motion to Dismiss, Defendant contends that Plaintiff's equitable indemnity claim should be dismissed because Plaintiff failed to assert valid legal defenses to the IRS's claim. Defendant first contends that Plaintiff had a complete defense because Plaintiff purchased the treasury securities after a competitive bidding process. According to Defendant, IRS regulations that apply to the bond at issue provide that a competitive bidding process presumptively establishes fair market value. IRS Revenue Procedure 96-41 provides that "[a]bsent extraordinary circumstances, a bona fide bidding procedure consistent with the principles of the safe harbor for guaranteed investment contracts [in § 1.148-5(d)(6)(iii)] is rebuttably presumed to establish fair market value for transactions to which this revenue procedure is applicable...." IRS Rev. Proc. 96-41 § 2.19. Defendant asserts that the equitable indemnity claim should be dismissed because it is apparent on the face of Plaintiff's Complaint that the securities were purchased using a bona fide bidding procedure, and Plaintiff has failed to allege a factual basis to rebut the legal presumption that the bidding process was "bona fide" in compliance with the regulations.

IRS Revenue Procedure 96-41 states that a bona fide bidding process only creates the rebuttable presumption of fair market value if the safe harbor requirements of 26 CFR § 1.148-5(b)(6)(iii) are met. Plaintiff's Complaint does not allege that the securities were purchased using a bona fide bidding process that complied with the safe harbor requirements. Plaintiff's Complaint simply alleges that it was the understanding of Plaintiff and other parties to the bond issue that the Treasury securities were competitively bid. While the arbitrage certificate signed by Mercer's President recites that the securities were acquired pursuant to a public bidding process, this assertion does not establish that the safe harbor requirements were met. The bidding process must comply with the safe harbor requirements to give rise to the presumption, and neither Plaintiff's Complaint nor the documents central to the allegations in the Complaint contain facts establishing that the alleged bidding process met those requirements. As a result, this Court cannot conclude at the early stage of this case that Plaintiff had a valid legal defense based on a bona fide competitive bidding process.[1]

Defendant also contends that Plaintiff had a complete legal defense based on the representations contained in the arbitrage certificate.[2] Under the regulations applicable in this case, an arbitrage certificate could protect the tax-exempt status of a bond if the issuer certified that on the date of issue it was the issuer's reasonable expectation that the bond proceeds would not be used in a manner that would cause the obligation to be an arbitrage

---

[1] It is worth noting that the IRS's preliminary adverse determination flatly rejected the argument that the securities were purchased using a bona fide bidding procedure.

[2] This Court can consider the certificate in ruling on this 12(b)(6) Motion even though it is not attached to the Complaint because (1) the contents of the certificate are alleged in the Complaint, (2) it is central to Plaintiff's claim, and (3) its contents are undisputed.

bond. 26 C.F.R. § 1.103-13(a)(2)(i) (1992). A certification made in bad faith does not protect the nonarbitrage status of a bond issue. IRS Rev. Rul. 85-182. In this case, the arbitrage certificate recites that it was Plaintiff's and the Authority's reasonable expectation that the bond money would not be used to acquire higher yielding investments. According to Defendant, this arbitrage certificate afforded Plaintiff a complete defense to the IRS's claim because the certification protected the tax-exempt status of the bond issue unless the certification was made in "bad faith." Because Plaintiff has not pled a factual basis to support an allegation that the certificate was issued in bad faith, Defendant argues that Plaintiff's equitable indemnity claim should be dismissed.

The fact that Plaintiff has failed to allege that the certificate was issued in bad faith does not warrant dismissal. The Federal Rules employ a notice pleading standard, which requires only that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the...claim is and the grounds upon which it rests.'" Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (quoting Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)). Factual allegations are sufficient if they merely "raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1965. Plaintiff pled the lack of a legal defense in paragraph 42 of its Complaint when it alleged, "Plaintiff sustained an actual liability to the United States Treasury for which <u>no complete legal defense existed</u>." The factual allegations contained in Plaintiff's Complaint with respect to its equitable indemnity claim give Defendant fair notice of the

8

claim and the grounds upon which it rests. If this Court accepted Defendant's argument, a plaintiff seeking equitable indemnity in federal court would be faced with the onerous task of pleading facts that negate the existence of every possible legal defense it may have had to the predicate claim. Such a requirement would controvert the policies that underlie the Federal Rules's notice pleading standard and impermissibly impose a heightened pleading standard in equitable indemnity cases. Accordingly, this Court finds that Plaintiff has adequately pled that it did not have a valid legal defense to the IRS's preliminary adverse determination.

### c. Imputed liability

Last, Defendant contends that Plaintiff's equitable indemnity claim should be dismissed because no wrong was imputed to Plaintiff. Defendant relies on Nguyen v. Lumbermens Mut. Cas. Co., 261 Ga. App. 553, 583 S.E.2d 220 (2003), for this assertion. In Nguyen a surety attempted to assert a common law indemnity claim against an individual whose wrongful conduct caused the surety to be liable for the amount of the surety bond. Id. at 554, 583 S.E.2d at 222. The Georgia Court of Appeals stated that a person can only seek common law indemnity if he is "'compelled to pay damages because of negligence imputed to him as the result of a tort committed by another.'" Id. at 556, 583 S.E.2d at 224 (quoting Southern Nitrogen Co. v. Stevens Shipping Co., 114 Ga. App. 581, 584, 151 S.E.2d 916, 920 (1966)). Because no wrong was imputed to the surety, it could not seek common law indemnity. Id. The surety's duty to pay the amount of the bond arose solely from its contractual obligation as a surety. Id.

Here, Defendant argues that Plaintiff's liability on the bonds was not the result of wrongful conduct that was imputed to Plaintiff. Defendant asserts that Plaintiff was liable for the taxability of the bonds solely because of Plaintiff's covenant and indemnity obligations to the Authority under its loan agreement with the Authority. This Court disagrees. In a conduit borrowing, "the true obligor of the bond issuance is the conduit borrower. The issuer merely lends its name to the issuance to obtain tax-exempt interest rates for the conduit borrower." 1995 FSA LEXIS 334. Plaintiff, as the conduit borrower, was a party to the bond transaction and participated in the decision to purchase the securities from Defendant. Based on the representations that Defendant made regarding the fair market value of the securities and their corresponding yield, Plaintiff and the Authority decided to purchase the securities from Defendant, and they certified that their reasonable expectations were that the yield on the securities was not materially higher than the yield on the bonds. Because of Defendant's alleged wrongful conduct, the yield on the treasury securities was in fact materially higher than the yield on the bonds, and therefore, the bonds were considered by the IRS to be arbitrage bonds. This meant that the interest on the bonds was not tax-exempt, and the IRS could tax the bondholders for the interest they received on the bonds. Rather than taxing the bondholders, the IRS entered into a closing agreement with Plaintiff to resolve the audit. Had the IRS taxed the bondholders, the bondholders would have been able to pursue a claim against Plaintiff because, as the conduit borrower, it was the true obligor of the bonds. The liability Plaintiff was exposed to was based on its status as the obligor rather than its indemnity obligations with the Authority. While the facts

presented in this case are unique and do not resemble any of the factual situations that can be found in any Georgia cases that involve indemnity claims, there is nothing in Georgia law that prevents the obligor of a bond issue from asserting an indemnity claim against a broker whose wrongful conduct causes the bonds to lose their tax-exempt status and forces the obligor to enter into a settlement with the IRS to protect the tax-exempt status of the bonds. Defendant's Motion to Dismiss Plaintiff's equitable indemnity claim on this ground is therefore denied.

### 2. Fraud Claim

Defendant contends that Plaintiff's fraud claim should be dismissed because it is barred by the statute of limitations. Plaintiff's fraud claim is governed by a four year statute of limitations. See O.C.G.A. § 9-3-31. Though Defendant's alleged fraudulent conduct occurred more than four years before Plaintiff filed suit, Plaintiff contends that its claim is not barred by the statute of limitations because Defendant's fraud concealed the existence of the claim. When a "plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." O.C.G.A. § 9-3-96. Defendant argues that Plaintiff's claim is barred by the statute of limitations because (1) Plaintiff has not alleged in its Complaint how Defendant concealed information from it, and (2) Plaintiff could have discovered any alleged fraud with reasonable diligence.

Under O.C.G.A. § 9-3-96, "a plaintiff must prove that the defendant engaged in actual fraud involving moral turpitude which concealed the existence of a claim, and the plaintiff

11

must show that he or she exercised 'reasonable diligence' in discovering the cause of action." Federal Ins. Co. v. Westside Supply Co., 264 Ga. App. 240, 243, 590 S.E.2d 224, 229 (2003). When actual fraud is the basis of a plaintiff's action, the silence of the party committing the fraud is "'treated as a continuation of the original fraud and as constituting fraudulent concealment, and the statute of limitations does not begin to run against such right of action until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence.'" GE Life and Annuity Assur. Co. v. Barbour, 191 F. Supp. 2d 1375, 1381 (M.D. Ga. 2002) (quoting Shipman v. Horizon Corp., 245 Ga. 808, 808, 267 S.E.2d 244, 246 (1980)). Because the basis of this claim is fraud, Plaintiff does not have to plead that Defendant committed an independent act of concealment separate from the original fraudulent conduct that is alleged in the Complaint. Plaintiff's allegation of fraud in its Complaint is sufficient to toll the statute of limitations so long as Plaintiff exercised reasonable diligence in discovering the cause of action.

The issue of a plaintiff's reasonable diligence in discovering the alleged fraud is generally a question of fact for the jury to decide. Federal Ins. Co., 264 Ga. App. at 243, 590 S.E.2d at 229. Here, Defendant contends that Plaintiff did not exercise reasonable diligence as a matter of law because it could have discovered the alleged illegal markup of the treasury securities by examining the quote prices contained in the New York Times. This Court disagrees. Paragraph 67 of Plaintiff's Complaint contains a detailed list of the steps that Plaintiff took to exercise reasonable diligence in assuring that the treasury securities were not excessively marked up by Defendant. Based on these factual allegations, this Court cannot

12

say that Plaintiff did not exercise reasonable diligence as a matter of law. As is usually the case, the issue of Plaintiff's reasonable diligence in discovering the alleged fraud is a question of fact for the jury. Defendant's Motion to Dismiss Plaintiff's fraud claims is therefore denied.

### 3. Request for Judicial Notice

Plaintiff requests that this Court take judicial notice of (1) an SEC press release that describes SEC enforcement actions against brokerage firms for yield burning, (2) an excerpt from an IRS manual that discusses IRS procedure for the recovery of arbitrage payments, and (3) an IRS field service memoranda that concerns closing agreements. Defendant contends that judicial notice of the IRS documents is not appropriate because they are not adjudicative facts, but nonetheless Defendant does not object to this Court's consideration of the documents because they embody administrative law and procedure. Defendant does object to this Court's consideration of the SEC press release on the grounds that it is irrelevant and prejudicial. Plaintiff contends that the SEC press release should be considered by this Court because it provides helpful background information to the Court.

The information contained in the SEC press release does not contain helpful background information. The information contained in the press release is irrelevant to this Court's consideration of Defendant's Motion to Dismiss, and it is prejudicial. As a result, Plaintiff's Request for Judicial Notice of the SEC press release is denied.

### 4. Motion for Hearing

Defendant has requested a hearing on its Motion to Dismiss. Because the Court has

ruled on Defendant's Motion to Dismiss without holding a hearing, Defendant's Motion for Hearing is denied as moot.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is denied, Plaintiff's Request for Judicial Notice is denied, and Defendant's Motion for a Hearing is denied.

**SO ORDERED**, this the 26th day of March, 2008.

*s/ Hugh Lawson*
**HUGH LAWSON, Judge**

dhc